**United States District Court**
**Eastern District of Michigan**
**Southern Division**

| | |
|---|---|
| The United States of America, | Criminal No. 21-cr-20354 |
| Plaintiff, | Hon. Paul D. Borman |
| v. | |
| D-19 Fabian Toodle, | |
| Defendant. | |

**Government's Response Opposing Defendant's**
**Motion for Revocation of Detention Order [ECF No. 446]**

Fabian Toodle is a long-time, high-ranking member of the Traveling Vice Lord ("TVL") branch of the violent Almighty Vice Lord Nation ("AVLN") gang and a drug trafficker, facing a presumption of pretrial detention. Toodle is the Chief of the Detroit chapter of the TVL branch and serves as a Universal Elite. He has a history of significant violence and threats of violence, including a conviction for assault with intent to do great bodily harm. Toodle and other TVL members also traffic cocaine, crack cocaine, methamphetamine, and marijuana in Michigan and other states.

Toodle also repeatedly violates court supervision. He committed the charged offenses during a term of state supervision while having an active unrelated violation warrant. And he has a history of absconding from parole and probation supervision.

There are no conditions or combination of conditions of release that will ensure the safety of the community and Toodle's appearance before this Court. For

these reasons, Pretrial Services recommended detention and Magistrate Judge Kimberly G. Altman ordered Toodle detained. (ECF No. 141: Det. Order, PageID.372).

Toodle now challenges this order. (ECF No. 446: Mot. to Revoke Det. Order, PageID.1858). Because Toodle remains a danger to the community and a flight risk, this Court should deny Toodle's motion and order his continued pretrial detention in this matter.

I.  **Legal Standard**

Pursuant to the Bail Reform Act, 18 U.S.C. § 3142, a defendant may be detained pending trial only if a judicial officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). Under § 3145, this Court reviews a magistrate judge's pretrial order *de novo*. *See United States v. Yamini*, 91 F. Supp. 2d 1125, 1128-29 (S.D. Ohio Feb. 24, 2000) (collecting cases). The United States moves for detention under § 3142(f)(1)(C), because the charges involve a drug offense punishable by 10 years or more. The government seeks detention on both non-appearance and dangerousness grounds.

Because Toodle is charged with a drug crime carrying a penalty of 10 years or more of imprisonment, there is a statutory presumption of detention, 18 U.S.C. § 3142(e)(3)(A), which Toodle may rebut if he "comes forward with evidence that he does not pose a danger to the community or a risk of flight." *United States v. Stone*, 608

2

F.3d 939, 945 (6th Cir. 2010). Once a defendant satisfies his burden of production, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Id.* (internal citation omitted). "The presumption remains a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *Id.* "To rebut the presumption, therefore, a defendant should present all the special features of his case that take it outside the congressional paradigm." *Id.* at 946 (internal citations and quotations omitted).

In addition to the presumption of detention, the Court must consider the following factors: (1) the nature and circumstances of the offense; (2) the weight of the evidence as it relates to dangerousness and risk of flight; (3) the defendant's history and characteristics, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

## II.     Factual Background

Toodle is charged in Count 1, a racketeering conspiracy, and Count 4, a drug-trafficking conspiracy. *See* (ECF No. 1: Indictment, PageID.3-122, 126-130).  The United States relies on its factual proffer during the June 7, 2021 detention hearing, and some additional relevant facts, which are detailed below.  This proffer included (1) a written proffer (ECF No. 85: Written Proffer in Support of Mot. for Det.); (2) the Pretrial Services Report; (3) evidence of Toodle's involvement in the AVLN; (4) evidence of Toodle's drug trafficking; and (5) facts surrounding the investigation of Toodle.

### i.     The AVLN is an organized, violent gang.

The AVLN is a highly organized, violent gang adhering to strict by-laws and a chain-of-command structure.  (ECF No. 85: Written Proffer, PageID.266-70).  Vice Lord members must follow orders from higher-ranked leaders, like Toodle.  (*Id.* at PageID.268).  AVLN literature requires that members must "never deny [an] order from [a] superior officer of this nation.  You will carry it out immediately[.]" (*Id.*).  This includes orders to commit violent acts like murder. (*Id.*).

Vice Lords promote a climate of fear through violence and threats of violence. Gang members are strictly prohibited from speaking with outsiders about the Vice Lords or from cooperating with law enforcement.  Vice Lords kill members suspected of cooperating with law enforcement.  *See* (*id.* at PageID.270-74).  They also have a long memory and do not forget when gang members cooperate with law enforcement.

4

(*Id.* at PageID.273). On May 27, 2015, AVLN members fired 23 shots into the home of V.T. and S.T., two former Vice Lords whom AVLN members believe cooperated with federal law enforcement. During the shooting, several bullets injured V.T., and S.T., as well as their family members, T.T.-1 and T.T.-2—mere centimeters made the difference between a quadruple homicide and the victims' eventual survival of the shooting. Nearly four years later—after a federal prosecution for AVLN members involved in the May 2015 shooting—AVLN members continued to discuss plans to murder the suspected cooperators.

Current power struggles within AVLN leadership also present significant danger for violent retaliation. Under AVLN law, treason is punishable by "no less than a life of misery or Death." (*Id.* at PageID.275). Members of the TVLs, Toodle's branch, and the Mafia Insane Vice Lords ("MIVL") were spearheading a plan to murder and overthrow Insane Vice Lord ("IVL") Prince, and leader of the AVLN in Michigan, D-1 Kevin Fordham, and those underneath his leadership. These plans involved recorded discussions with members of the MIVL and the TVL branches.

Vice Lords also possess and share firearms to protect themselves and other AVLN members. Under AVLN law, gang members are required to protect and defend AVLN members, which includes retaliation for any violence carried out against an AVLN member. (*Id.* at PageID.279). AVLN literature requires, "If One Member Fights, We All Fight." (*Id.*). Specifically, "it is the unspoken obligation of every VL [Vice Lord] to defend himself [and] every other VL to the extent of giving

5

their life[,] if necessary" and "[i]f any VL is attacked[,] it is the sworn duty of every VL to overcome his attacker by whatever means necessary." (*Id.*).

Gang members are required to "aid and assist" other AVLN members. (*Id.*). Specifically, Law #1 of the AVLN's Supreme Constitutional Laws provides, "[a]t any time a member is in trouble, in danger, or need of assistance, you are to assist them, whether they are right or wrong[,] to the best of your ability[.]" (*Id.* at PageID.279-80). And Law #14 provides, "A Vice Lord must act as a soldier for the [Almighty Vice Lord] Nation to the point of his/her death." (*Id.*) This includes carrying and using firearms to protect themselves and other AVLN members. (*Id.*)

The AVLN also participates in drug trafficking involving fentanyl, cocaine, cocaine base, heroin, ecstasy/MDMA, methamphetamine, prescription pills, and marijuana. (*Id.* at PageID.280). Based on their involvement in the gang, AVLN members enjoy connections to drug suppliers and utilize an interstate network to facilitate drug trafficking. (*Id.*).

> ii. **Toodle is a high-ranking gang member with a violent history and a readiness to commit further violence on behalf of the AVLN.**

According to MDOC records, Toodle has been a member of the Vice Lords since at least April 2001. Since his release from MDOC custody in 2010, Toodle has been an active member of the TVL branch, engaging in drug conspiracies with other members, hosting TVL gang meetings at his home, and using his reputation for violence to keep order within the branch. In late February 2021, he was promoted to

Chief of the Detroit chapter of the TVL branch. That rank carries with it substantial authority to order other members to act at his direction, orders which they are required to follow.

Toodle has a violent reputation among his fellow gang members, and has expressed a willingness to direct violence at them, if directed and paid. On January 23, 2021, during a TVL gang meeting (referred to as a "G.O.A.L." or "Gathering of Almighty Lords"), D-9 Javon Wilhite discussed with Toodle and other TVL members how they planned to traffic large quantities of cocaine and other drugs from AVLN connections in Chicago, including drugs supplied by D-3 Tamar Watkins. Wilhite explained to the other members that if they "messed up the bag[,]" or failed to provide the proceeds from the drug sales for the drugs provided on consignment, that Toodle would shoot them. During a recorded conversation a few days later, Toodle confirmed that he was prepared to "handle" TVL members who did not return with the owed drug proceeds as long as he was paid for it.

Toodle's willingness to resort to violence is not limited to disciplining fellow Vice Lord members. Toodle was convicted of Assault with Intent to Cause Great Bodily Harm in February 2001. That conviction involved Toodle shooting two people at the direction of his co-defendant, a kilogram level cocaine dealer. Though this incident occurred 20 years ago, Toodle was still referencing it as recently as November 2020 in a conversation recorded by law enforcement. And Toodle has continued to credibly threaten violence towards community members and their

7

families. In August 2017, Toodle threatened the lives of his employer and his family. Toodle's employer, who had been assisting Toodle by giving him rides to work, took the threats seriously, alerting Toodle's probation officer and seeking a Personal Protection Order against Toodle.

### iii. Toodle is a drug trafficker.

Toodle sells drugs with TVL members. During a recorded call, in early December 2020, D-9 Javon Wilhite discussed selling Toodle pounds of marijuana supplied by a TVL connection. And Toodle was actively involved in the agreement to sell cocaine and other drugs provided from connections in Chicago, discussed above.

Toodle, however, is not beholden to Wilhite's drug connections. In February 2021, during a recorded conversation, Toodle described having his own "connect[,]" or drug supplier, for high-quality methamphetamine. And Toodle delivered—on April 7, 2021, he sold 12 grams of pure methamphetamine. As April 2021 progressed, Toodle explained in multiple recorded calls that he had more drugs for sale. Toodle has multiple suppliers, including a "connect" providing methamphetamine deliveries through the mail.

### iv. Toodle fails to abide by release conditions, commits new crimes while on supervision, and absconds from probation and parole.

Toodle has repeatedly done poorly under court supervision. The Pretrial Services Report shows that he has violated probation and parole conditions on multiple occasions. And while on probation and parole, Toodle continued to

8

associate with the Vice Lords, purchased and sold methamphetamine, threatened members of the community with violence, and committed new criminal offenses.

After serving nearly ten years relating to the shooting of two people, Toodle was paroled in October 2010. He violated parole in December 2011 by using cocaine, and in May 2012, simply stopped reporting, going into absconder status. Following reinstatement to parole, and during its continuing term, in mid-2013 he was involved in a check cashing scheme, for which he was later convicted of Uttering and Publishing. This new offense constituted yet another violation of his terms of parole.

Toodle received a two-year term of probation for the Uttering and Publishing conviction on January 24, 2014. Toodle did so poorly under this supervision that his continual violations resulted in this probation term stretching into 2021. During this probation term, Toodle absconded from supervision multiple times, threatened a man's life, failed to pay restitution and other costs, and committed the charged offenses in this matter. Toodle had an active warrant for his arrest for a probation violation from September 2019 until his arrest on March 12, 2021, a time during which he heavily associated with the Vice Lords, obtained the rank of Chief of the Detroit TVLs, and engaged in the bulk of the drug-trafficking conspiracy charged in this matter.

### III. Argument

Toodle—a violent, high-ranking gang member and drug supplier—poses a significant danger to the community and nonappearance risk. Toodle also faces a presumption of detention. For these reasons, Magistrate Kimberly G. Altman ordered his detention (ECF No. 141: Det. Order, PageID.372), which this Court should continue.

### i. Toodle, a violent AVLN member and drug trafficker, is a danger to the community.

Toodle is charged with racketeering and drug-trafficking conspiracies. Drug trafficking itself is a dangerous offense. But there is more to Toodle's dangerousness because of the gang element. "In dealing with the danger to the community or other person concept, the courts look to more than whether or not defendant himself has been guilty of physical violence[.]" *United States v. Vance*, 851 F.2d 166, 169 (6th Cir. 1988). "[T]he concept of a defendant's dangerousness as used in the [Bail Reform] Act is to be given a broader construction than merely danger of harm involving physical violence. Congress was apparently concerned with the safety not only of a particular identifiable individual, perhaps a victim or witness, but also of the community as a whole." *Id.* (internal citations and quotes omitted). The AVLN is dangerous as an enterprise and the Court is not required to ignore this fact. *See, e.g., United States v. Billingsley*, 682 F. App'x 681, 683 (10th Cir. 2017) ("[W]e are not convinced that the

district court should ignore evidence about the group as a whole. It is important context that this DTO is intensely feared.").

Toodle's dangerousness far exceeds even the danger inherent to drug trafficking. He was previously convicted of shooting two people at the direction of another individual, and has threatened fatal violence against fellow gang members and members of the community alike.

There are also significant witness-safety concerns. Broadly speaking, the Vice Lords have a long and documented history of attempting to kill and killing members suspected of cooperating with law enforcement. Because of the power that leaders within the Vice Lords exert over other members, it takes only a simple phone call to direct other Vice Lords to undertake a witness-silencing mission. On multiple occasions, law enforcement has reviewed jail calls during which violence is directed, including from incarcerated leaders, like D-4 Terry Douglas, have directed other TVLs to engage in violence to "violate" or physically assault other Vice Lords. Given the charges in this indictment, the incentive to seek retribution against perceived cooperators is only higher now, and under AVLN law, Toodle is required to carry out these violent orders.

Toodle also has his own authority within the Vice Lords. He is the Chief of the Detroit TVLs, which means that he can order other members to engage in violence, and under AVLN law, lower-ranked members must follow his orders.

11

Toodle is a violent man who can order gang members to silence those whom he believes have betrayed him. No release conditions can prevent this.

To add to this dangerousness, Toodle is also a drug dealer. He is charged with a controlled-substance offense, which is a factor under § 3142(g)(1). The Sixth Circuit "routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence." *Stone*, 608 F.3d at 947 n.6; *see also United States v. Gray*, 20 F. App'x 473 (6th Cir. 2001) (in conspiracy to possess with intent to distribute cocaine, testimony from family members was insufficient to overcome the presumption of detention). But Toodle is more than your average drug dealer—he utilizes gang contacts to obtain drugs, and has a supplier sending him drugs through the mail.

The nature and circumstances of the charged offenses are serious. The AVLN is a violent, retaliatory gang, and Toodle has demonstrated a chilling and continuing readiness to resort to violence. There are no conditions or combinations of conditions—even the most restrictive condition of home incarceration—that will reasonably protect the public from Toodle's dangerousness, particularly when Toodle can order a violent retaliation with a simple phone call or in-person meeting.

The weight of the evidence likewise supports detention. The weight of the evidence "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948. "[S]trong evidence against a person . . . could increase the likelihood of danger to the community because they

12

could believe that they are more likely to be incarcerated in the future, causing them to be more likely to engage in dangerous behavior." *United States v. Rice*, No. 3:04CR-83-R, 2006 WL 1687749, at *2 (W.D. Ky. June 19, 2006). As discussed above, the weight of the evidence against Toodle is strong, and makes it more likely that he will engage in dangerous behavior.

Toodle's history and characteristics likewise support detention. He has a violent criminal history, and has continued to threaten violence against multiple individuals, including while under court supervision. He has no verifiable employment and has committed new offenses—including the serious offenses charged in this case—while under court supervision.

Toodle cannot overcome the presumption of detention. Toodle is the type of offender that, in Congress's "substantive judgment . . . should ordinarily be detained prior to trial." *Stone*, 608 F.3d at 945. He does not present "special features" that take his case "outside the congressional paradigm." *Id.* at 946. Even if Toodle rebutted the presumption of detention, it is a factor that weighs heavily in favor of detention.

### ii. Toodle is a risk of flight.

Likewise, no conditions will reasonably assure Toodle's appearance as required. Toodle is a high-ranking member in a national gang, with no stable, legitimate employment. He is a drug dealer, with multiple suppliers, both through other TVL members and his own connections.

Toodle's incentive to flee is high. Due to his prior serious violent felony conviction, Toodle is facing a 15-year mandatory minimum sentence if convicted of the drug-trafficking conspiracy, and faces the possibility of life imprisonment. The evidence of Toodle's offenses is overwhelming—recorded calls and meetings, a recorded methamphetamine sale, and other evidence which establishes the elements of his charged offenses. In the face of a high likelihood of conviction for serious offenses, there is little reason to believe that Toodle is not a substantial flight risk.

The best predictor of an individual's future compliance is his past behavior. Toodle has repeatedly failed to comply with reporting requirements of parole and probation, and had an active warrant for his arrest for a probation violation for a year and a half, from September 2019 until March 2021, when he was ultimately arrested on the warrant. There is no reason to believe that Toodle's release in this matter would go any differently than his past bouts of supervision, which were uniformly and fully a failure, and involved his disappearing for weeks and months at a time. There are no conditions of release that will adequately assure his appearance as required.

## IV. Conclusion

Because of Toodle's dangerousness and non-appearance risk, the Court should deny his motion, and continue his detention pending trial.

                                        Respectfully Submitted,

                                        Saima S. Mohsin
                                        Acting United States Attorney

                                        */s A. Brant Cook*
                                        A. Brant Cook
                                        Assistant United States Attorney
                                        211 West Fort Street, Suite 2001
                                        Detroit, Michigan  48226-3211
                                        (313) 226-9756
                                        Brant.cook@usdoj.gov

Date: September 7, 2021

## Certificate of Service

I hereby certify that on September 7, 2021, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification to the attorney of record.

/s A. Brant Cook
A. Brant Cook
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226-3211
(313) 226-9756
Brant.cook@usdoj.gov
